UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

CREDIT EUROPE BANK, N.V.,

    Plaintiff,

v.

TUSPA TRADE, LLC,

    Defendant.

Case No. 3:17-cv-0129-LRH-WGC

ORDER

Before the court is plaintiff Credit Europe Bank, N.V.'s ("CEB") motion for a preliminary injunction. ECF No. 7. Defendant Tuspa Trade, LLC ("Tuspa") filed an opposition (ECF No. 22) to which CEB replied (ECF No. 26). Along with its reply, CEB filed evidentiary objections to certain declarations submitted in support of Tuspa's opposition. ECF No. 27.

## I.   Facts and Procedural Background

At its core, this is a fraudulent transfer action brought under NRS § 112.180 for the fraudulent transfer of stock shares by non-party Hasmet Bedii Kurum ("Mr. Kurum"), an individual and Turkish citizen, to defendant Tuspa Trade, LLC ("Tuspa"), a Nevada limited liability company. *See* ECF No. 1.

Plaintiff Credit Europe Bank, N.V. ("CEB") is an international bank incorporated in the Netherlands with its principal place of business in Amsterdam. On or about January 25, 2013, CEB entered into a credit agreement with non-parties Kurum International S.H.A. ("Kurum International"), an Albanian company, and Kurum Demir Sanayi Dis Ticaret A.S. ("Kurum

1

Demir") (collectively "borrowers"), a Turkish company, known as the Framework Credit Agreement.[1] Pursuant to the credit agreement, CEB agreed to extend borrowers €10,000,000.00 in uncommitted credit. Borrowers' performance under the credit agreement was guaranteed by Mr. Kurum and non-party Kurum Holding A.S., an Albanian company (collectively "guarantors").[2] Mr. Kurum is the owner/director of all the various entities.

Under the credit agreement and guarantee, the borrowers and guarantors pledged all corporate and individual assets to CEB and specifically agreed that no party would transfer any asset without CEB's written approval. *See* ECF No. 1, Ex. A. Further, the credit agreement provided that a default of the agreement would occur if any of the parties (1) ceased to exist; (2) ceased business operations; or (3) underwent any court ordered liquidation or reorganization. *Id*. On June 1, 2015, the parties entered into a First Supplemental Agreement to the credit agreement through which CEB agreed to increase the line of uncommitted credit from €10,000,000.00 to €20,000,000.00.[3]

On or about February 26, 2016, CEB sent a notice of default notifying all parties that an event of default had occurred under the loan agreement and that repayment of all amounts disbursed under the credit agreement were now due.[4] The underlying event of default was the bankruptcy filing of borrower Kurum Demir in Turkey. A second notice of default was sent to all parties on or about March 4, 2016.[5] This second notice identified an additional event of default; the bankruptcy filing of borrower Kurum International in Albania. Neither the borrowers (who have filed for bankruptcy) nor the guarantors have responded to CEB's notices of default nor repaid any of the outstanding debt due under the credit agreement. At this time, the amounts owed under the credit agreement are €11,109,323.00 and $5,194,816.40.[6]

Prior to either event of default, but after he had signed the guarantee of the credit agreement, Mr. Kurum, along with another associate, Serafattin Ismail Kirpikli ("Mr.

---

[1] A copy of the credit agreement is attached as Exhibit A to the complaint. ECF No. 1, Ex. A.
[2] A copy of the guarantee is attached as Exhibit A to the complaint. ECF No. 1, Ex. A.
[3] A copy of the First Supplemental Agreement is attached as Exhibit B to the complaint. ECF No. 1, Ex. B.
[4] A copy of the notice of default is attached as Exhibit C to the complaint. ECF No. 1, Ex. C.
[5] A copy of the second notice of default is attached as Exhibit D to the complaint. ECF No. 1, Ex. D.
[6] Amounts owed are identified under both Euros (€) and U.S. Dollars ($) as credit was drawn against CEB under the credit agreement under both currencies.

2

Kirpikli"), formed defendant Tuspa on or about November 3, 2014. Mr. Kurum was the founding member and operating manager of Tuspa at the time it was incorporated. On or about January 26, 2015, during the time borrowers were drawing millions on the credit agreement, Mr. Kurum entered into a gift agreement with Tuspa. The gift agreement was entered into by Mr. Kurum both individually and on behalf of Tuspa. Through the gift agreement, Mr. Kurum transferred 100% of the stock shares in a company known as Kosova e Re Sh. p.k. ("Kosova"), an insurance company in the Republic of Kosovo, to Tuspa for no monetary compensation. This transfer of shares was allegedly done without CEB's knowledge and without CEB's express written consent and approval.

On or about June 2016, Mr. Kirpikli allegedly acquired Tuspa and became the operating manager. While manager of Tuspa, Mr. Kirpikli entered into a transaction with Fitorja SH.P.K ("Fitorja"), a Kosovo company, for the purchase of Tuspa. On November 10, 2016, Fitorja purchased Tuspa for €2,100,000.00. As of now, Fitorja is allegedly the current owner of defendant Tuspa.

On February 28, 2017, CEB filed the underlying complaint against Tuspa alleging a single cause of action for fraudulent transfer in violation of NRS § 112.180. ECF No. 1. In its complaint, CEB seeks avoidance of the transfer of Kosova shares from Mr. Kurum to Tuspa and attachment of the shares to CEB. *Id*. Along with its complaint, CEB filed an *ex parte* application for a temporary restraining order (ECF No. 4) and motion for a preliminary injunction (ECF No. 7) seeking to enjoin defendant Tuspa from transferring, selling, or in any way relieving itself of the Kosova shares during the pendency of this action. Also on February 28, 2017, the court issued an order granting CEB's *ex parte* application for a temporary restraining order and setting a hearing on the request for a preliminary injunction.[7] ECF No. 8.

## II.   Legal Standard

A court may grant a preliminary injunction upon a showing of: (1) irreparable harm to the petitioning party; (2) the balance of equities weighs in petitioner's favor; (3) an injunction is

---

[7] A hearing on CEB's motion for preliminary injunction was held on Monday, April 3, 2017.

in the public's interest; and (4) the likelihood of petitioner's success on the merits. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 376, 172 L. Ed. 2d 249 (2008) (citations omitted). In *Winter*, the Supreme Court stated that a "likelihood" is required as to all four factors. *See* 555 U.S. at 22. The Ninth Circuit has since interpreted the *Winter* decision as being compatible with a sliding scale, under which a party may satisfy the requirements for an injunction with a lower showing under one factor if there is a very strong showing under another. *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the sliding scale approach, the Ninth Circuit has determined that "serious questions" as to the merits would satisfy the "likelihood of success" requirement in the event of a strong showing of irreparable harm. *Id*.

### III.   Discussion

#### A.   Likelihood of Success on the Merits

In its motion, CEB argues that it is likely to succeed on the merits of its fraudulent transfer claim. *See* ECF No. 7. The court agrees.

Nevada law provides that a "transfer made . . . by a debtor is fraudulent as to a creditor" if the debtor made the transfer either (1) "[w]ith actual intent to hinder, delay or defraud any creditor of the debtor;" or (2) "without receiving a reasonably equivalent value in exchange for the transfer" so long as the debtor "[w]as engaged or was about to engage in a business transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction." NRS § 112.180(1). Further, under the fraudulent transfer statute, a court may consider whether "the transfer . . . was to an insider"; whether the debtor "retained possession or control of the property transferred after the transfer"; or whether the transfer "occurred shortly before or shortly after a substantial debt was incurred[.]" *See* NRS § 112.180(2). An insider specifically includes "[a] corporation of which the debtor is a director, officer or person in control." NRS § 112.150(7)(a)(4). CEB contends that it is likely to prevail on both subsections.

Here, the court finds that CEB has sufficiently alleged that Mr. Kurum specifically transferred the Kosova shares to defendant Tuspa solely to hinder, delay, or defraud his

4

creditors in violation of subsection (a) and (b). It is undisputed that the gift agreement specifically provided that the transfer of Kosova stock was without monetary compensation. Further, at the time he made the transfer, Mr. Kurum was the director and founder of Tuspa. As such, Mr. Kurum meets the statutory definition of an "insider" under NRS § 112.150(7)(a)(4). Moreover, the transfer of the shares took place in January 2015, during a time in which Kurum had guaranteed specific letters of credit and just a few short months before the first supplemental agreement was executed which extended the guaranteed line of credit by €10,000,000.00. Thus, Mr. Kurum executed the transfer at a time that he was engaged in or about to engage in business as the guarantor of the credit agreement. The gift transfer of Kosova shares helped Mr. Kurum deplete his assets to the point where he was unable to repay the millions of dollars that he owed and Tuspa has failed to provide any valid reason for Mr. Kurum to transfer the Kosova shares to Tuspa for free and without CEB's knowledge during a time he was doing business with CEB. Based on all these factors, the court finds CEB is likely to succeed on its fraudulent transfer claim.

In opposition, Tuspa contends that CEB is not likely to succeed on its fraudulent transfer claim because current owner Fitorja is a *bona fide* purchaser[8] of Tuspa and thus, Fitorja took good and valid title to Tuspa and the Kosova shares despite any previous fraudulent transfer. *See* ECF No. 22. Tuspa's argument is without merit for several reasons. First, defendant Tuspa cannot put forth a *bona fide* purchaser defense as it was not a purchaser of any property. *See Nationstar Mortg., LLC v. Belford*, 2016 U.S. Dist. LEXIS 74710, * 14. It is undisputed that Tuspa acquired the Kosova shares without monetary compensation. Second, although Fitorja claims it is a *bona fide* purchaser of Tuspa, Fitorja is not a party to this action

---

[8] In Nevada, a *bona fide* purchaser is "[a]ny purchaser who purchases an estate or interest in any real property in good faith and for valuable consideration and who does not have actual knowledge, constructive notice of, or reasonable cause to know that there exists a defect in, or adverse rights, title or interest to, the real property is a bond fide purchaser." NRS § 111.180(1); *see also, Bailey v. Butner*, 176 P.2d 226, 234 (Nev. 1947). Thus, a *bona fide* purchaser is any purchaser who: (1) takes the property for valuable consideration; (2) without notice of prior equity or interest; (3) without notice of facts upon which a diligent inquiry would be indicated; and (4) from which knowledge would be imputed to him, if the purchaser failed to make such an inquiry. *See Nationstar Mortg., LLC v. Belford*, 2016 U.S. Dist. LEXIS 74710, *14 (D. Nev. 2010). In the case of a *bona fide* purchaser, that purchaser can still take good and valid title to property even if the property was fraudulently conveyed to that purchaser so long as that purchaser has no notice of any other party's claim to the title of that property. *See Carrington Mortg. Servs., L.L.C. v. SFR Invs. Pool 1, LLC*, 2017 U.S. Dist. LEXIS 18583 (D. Nev. 2017).

and has not made an appearance in this litigation. The present motion seeks to enjoin defendant Tuspa, and not Fitorja. Further, to qualify as a *bona fide* purchaser of property, a purchaser must purchase the actual property at issue. Here, even though Fitorja acquired defendant Tuspa, there was no transfer of the Kosova shared from Tuspa to Fitorja. Neither Tuspa nor Fitorja are *bona fide* purchasers of Kosova under Nevada law. *See* NRS § 111.180(1). Therefore, the court finds that CEB is likely to succeed on the merits of its fraudulent transfer claim.

### B.  Irreparable Harm

The court has reviewed CEB's motion and finds that absent an injunction CEB will suffer irreparable harm as nothing prevents Tuspa from transferring the Kosova shares to another entity outside the court's jurisdiction. Tuspa has no other assets, no employees, and no business except acting as the nominal holder of the Kosova shares. Thus, if those shares are transferred during this action then defendant Tuspa will be completely devoid of assets and will be unable to satisfy any judgment entered in this action.

Further, CEB has provided evidence of Mr. Kurum's past actions in similar litigation establishing that CEB is likely to suffer irreparable harm in this action absent an injunction. For example, in December 2014, Kurum Holdings A.S., a co-guarantor of the credit agreement, transferred 100% of its shares of Durres Kurum Shipping to a Delaware company called Metal Commodities Foreign Trade Corp. ("MCFT"), another company Mr. Kurum formed with Mr. Kirpikli. After the underlying default of the credit agreement, CEB brought suit against Kurum Holding A.S. as guarantor before the court in Tirana, Albania. Part of that action was to annul the transfer of stock from Kurum Holding A.S. to MCFT and then to freeze those shares pending the outcome of litigation. However, upon receiving notice of the lawsuit, MCFT immediately transferred all the stock to a Scottish limited partnership in an attempt to deprive the Albanian court of jurisdiction and CEB of any recourse as to those shares. Thus, based on Mr. Kurum's past actions, CEB has established it will suffer irreparable harm absent a litigation.

///

///

6

### C. Balance of Equities

The court finds that this factor weighs in CEB's favor because, absent an injunction, CEB is likely to be facing an insolvent defendant thereby rendering any judgment worthless. In contrast, Tuspa will suffer no harm under an injunction because it does not conduct any business and only acts as the holder of the Kosova shares.

### D. Public Interest

Finally, the court finds that this factor is neutral to both parties because the proposed injunction does not affect the general public at large, and the public interest is in protecting the status quo. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138-39 (9th Cir. 2009) ("When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest factor will be at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction."). Therefore, based on the above, the court finds that CEB is entitled to a preliminary injunction in this action and shall grant CEB's motion.

### E. Bond

Rule 65(c) of the Federal Rules of Civil Procedure provides that the court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Here, the requested injunctive relief will not cause any harm to defendant Tuspa during the pendency of this action. Therefore, the court finds that a nominal bond of $100.00 is sufficient in this action.

IT IS THEREFORE ORDERED that plaintiff's motion for a preliminary injunction (ECF No. 7) is GRANTED in accordance with this order. Plaintiff Credit Europe Bank, N.V. shall post a nominal $100.00 bond within ten (10) days following entry of this order.

IT IS FURTHER ORDERED that defendant Tuspa Trade, LLC is ENJOINED from transferring, selling, gifting, or in any way relieving itself of any and all shares of Kosova e Re Sh. p.k., a Republic of Kosova insurance company, until further order of the court.

1   IT IS FURTHER ORDERED that plaintiff's evidentiary objections (ECF No. 27) are
2   DENIED as moot.
3   IT IS SO ORDERED.
4   DATED this 6th day of April, 2017.

                                        _____
                                        LARRY R. HICKS
                                        UNITED STATES DISTRICT JUDGE